UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUSSELL L. O'BRIEN,

                   Plaintiff,

     v.

COMMANDER GORDON KARLSSON,
*et al*.,

                   Defendants.

CASE NO. C13-2059-TSZ-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Russell O'Brien is a state prisoner who is currently confined at the Monroe Correctional Complex in Monroe, Washington.  He brings this action under 42 U.S.C. § 1983, seeking money damages for alleged violations of his civil rights which he claims occurred during the course of his confinement at the King County Correctional Facility in 2013.  Plaintiff identifies as defendants in this action Commander Gordon Karlsson, Sergeant Casey Allred, Corrections Officer Vincent Johnson, and Law Librarian Deborah Ogle.

Defendants have filed a motion for summary judgment seeking dismissal of all claims asserted by plaintiff in his amended complaint.  Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has

REPORT AND RECOMMENDATION
PAGE - 1

1    filed no response to defendants' motion.  The Court, having now carefully reviewed defendants'

2    motion, and the balance of the record, concludes that defendants' motion for summary judgment

3    should be granted and that plaintiff's amended complaint and this action should be dismissed

4    with prejudice.

5                                                    FACTS

6          Plaintiff has been incarcerated at the King County Correctional Facility ("KCCF") on

7    numerous occasions since 1992.  (Dkt. 27 at 2.)  His most recent period of incarceration at KCCF

8    began on April 17, 2013, and ended on October 8, 2013, when plaintiff was apparently

9    transferred into the custody of the Washington Department of Corrections.  (*Id.*)

10         1.  Facts Re: Workplace Safety/Mental Health Care

11         Plaintiff was an inmate worker at KCCF during his most recent period of incarceration at

12   KCCF.  Inmate worker status is a privilege afforded to qualified minimum custody inmates who

13   meet the screening criteria and are medically cleared by Jail Health Services ("JHS").  (Dkt. 27

14   at 2.)  Inmates selected as inmate workers watch a safety video which addresses topics such as

15   safety precautions, biohazards, MRSA, and cleanliness.  (*Id.*)  Inmates are thereafter provided

16   training on the job as needed.  (*Id.*)

17         Plaintiff was first assigned to inmate worker duties in the kitchen, but was removed from

18   that position after he was infracted for damaging a kitchen blower on May 9, 2013.  (*Id.*)

19   Plaintiff was subsequently reassigned to janitorial duties for the seventh floor at KCCF, the floor

20   which houses inmates with mental health issues.  (*Id.*)  Assignment to janitorial duties on the

21   seventh floor is considered non-standard work because of the high likelihood that the worker will

22   come into contact with various bodily fluids and feces.  (Dkt. 27 at 2.)  Inmates who are assigned

23   to perform non-standard work are compensated at a higher rate of pay than inmates performing

REPORT AND RECOMMENDATION
PAGE - 2

standard work and inmates often choose non-standard work in order to receive the higher rate of pay.  (*Id.*)  Before being assigned to the seventh floor, inmate workers are informed that they will be working with inmates who have mental health issues, that they will be performing non-standard work, and that they will likely have to clean up things such as feces and bodily fluids.  (*Id*. at 2-3.)  Inmates may refuse the assignment.  (*Id.* at 3.)  Plaintiff was provided the requisite information before being assigned to janitorial duties on the seventh floor and he accepted the assignment.  (*Id.*)

Plaintiff's janitorial duties on the seventh floor included cleaning the day room, sinks, showers, toilets, and floors, and emptying the trash.  (*Id.*)  Inmate workers are provided cleaning supplies and gloves.  Protective suits, eye protection, masks, and boots are also available for inmate workers to wear.  (*Id.*)

On June 16, 2013, plaintiff submitted a grievance in which he complained that another offender had exposed his genitals to plaintiff while plaintiff was performing his janitorial duties.  (*See* Dkt. 28, Ex. A.)  Plaintiff indicated in his grievance that this experience was particularly traumatic for him because he had been sexually abused as a child.  (*Id.*)  Plaintiff requested that he be provided with counseling as well as compensation for his mental distress.  (*Id.*)  On June 25, 2013, KCCF employee, Sergeant Mohammed, replied to the grievance and advised plaintiff that he would be moved to perform work on other floors and that he should make sure to kite the JHS staff if he needed their help.  (*Id.*)

On June 27, 2013, plaintiff filed a kite concerning the incident on June 16, 2013.  (*See* Dkt. 28, Ex. C.)  After receiving the kite, Sergeant Allred met with plaintiff to discuss the incident and to find out what plaintiff needed from KCCF.  (*Id.*, Ex. B.)  Sergeant Allred contacted JHS and a nurse responded to speak with plaintiff about his mental health issues.  (*See*

REPORT AND RECOMMENDATION
PAGE - 3

1    *id.*)  KCCF Captain Todd Clark, having been made aware of plaintiff's concerns on June 27,
2    2013, requested that Dr. Young from Jail Psychiatry also contact plaintiff.  (*Id.*, Ex. D.)  Dr.
3    Young contacted plaintiff on the same date and provided plaintiff with information to assist him
4    with his mental health problems.  (*Id.*)

5         During Sergeant Allred's contact with plaintiff on June 27, 2013, plaintiff made
6    comments that caused Sergeant Allred to be concerned for plaintiff's safety, and Sergeant Allred
7    therefore had plaintiff moved out of inmate worker housing to a different housing unit.  (*Id.*, Ex.
8    B.)  Plaintiff was not reassigned to other inmate worker duties after he was moved from inmate
9    worker housing on June 27, 2013.  (Dkt. 27 at 3.)

10        Plaintiff submitted multiple grievances concerning the incident on June 16, 2013 and on
11   July 2, 2013, Commander Karlsson sent a letter to plaintiff responding to his various grievances.
12   (*Id.*, Ex. C.)  Commander Karlsson noted in his letter plaintiff's request for counseling service
13   and indicated that he had confirmed with JHS that plaintiff had, in fact, been contacted on
14   several occasions by JHS to address his concerns arising out of the incident.  (*Id.*)  Commander
15   Karlsson also encouraged plaintiff to continue his contact with JHS to ensure that his mental
16   health concerns were appropriately addressed.  (*Id.*)

17        Plaintiff continued to submit grievances concerning the June 16, 2013 incident, even after
18   presumably receiving Commander Karlsson's letter.  (*See id.*, Ex. D.)  Plaintiff also submitted
19   grievances complaining that his change in housing assignment was erroneous and retaliatory in
20   nature.  (*See id.*)  On July 23, 2013, Captain Todd Clark sent plaintiff a letter advising him that
21   his various grievances had been investigated and closed.  (Dkt. 28, Ex. D.)  Plaintiff was
22   cautioned that further submission of grievances asserting the same complaint may be considered
23   an abuse of the grievance process and could result in disciplinary action.  (*Id.*)  Plaintiff was

REPORT AND RECOMMENDATION
PAGE - 4

1   encouraged to kite JHS if he required further health related services.  (*Id*.)

2       2.  Facts Re: Legal Workstation

3       During the course of his most recent incarceration at KCCF, plaintiff also submitted

4   numerous kites requesting access to the legal workstation.  (Dkt. 26 at 2.)  Defendant Deborah

5   Ogle, an administrative specialist at KCCF, is responsible for responding to such requests and for

6   scheduling inmates to use the legal workstation in accordance with King County Department of

7   Adult and Juvenile Detention ("DAJD") policy.  (*Id*. at 1.)  In her responses to plaintiff's kites,

8   Ms. Ogle informed plaintiff that pro se inmates were given scheduling priority and that he had

9   been placed on a waitlist for represented inmates.  (*Id*. at 2.)  Plaintiff was also advised that in

10  order to receive scheduling priority he would have to provide proof of his pro se status.  (*Id*.)

11  Plaintiff never provided any proof of his pro se status and therefore never received scheduling

12  priority for the legal workstation.  (*Id*.)  Plaintiff was scheduled to use the workstation on one

13  occasion in June 2013, but plaintiff missed the appointment and was placed back on the waitlist.

14  (*Id*. at 3.)  Plaintiff's name did not reach the top of the list again prior to his release from KCCF

15  in October 2013.

16              DISCUSSION

17      Plaintiff appears to allege in his amended complaint that during his period of

18  incarceration at KCCF in 2013 he was (1) denied a safe work environment and proper training,

19  (2) denied treatment for mental health issues related to his inmate work assignment, (3) removed

20  from the inmate worker program in retaliation for voicing concerns about conditions encountered

21  as an inmate worker and for requesting help to deal with the stress associated with being an

22  inmate worker, and (4) denied access to the legal workstation.  (Dkt. 10 at 3-4.)  Defendants

23  argue in their motion for summary judgment that plaintiff's claims should be dismissed because

REPORT AND RECOMMENDATION
PAGE - 5

he has failed to establish any violation of his federal constitutional rights.

<u>Motion for Summary Judgment</u>

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are facts which might affect the outcome of the pending action under governing law.  *See Anderson*, 477 U.S. at 248.  Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on a motion for summary judgment, the court may not weigh the evidence or make credibility determinations.  *Anderson*, 477 U.S. at 248.

<u>Section 1983 Standard</u>

In order to set forth a *prima facie* case under § 1983, a plaintiff must establish a deprivation of a federally protected right.  *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  The particular harm complained of must be scrutinized in light of specifically enumerated rights.  *Id*.  That a plaintiff may have suffered harm, even if due to another's negligent conduct, does not itself demonstrate a violation of constitutional protections.  *See*, *e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[W]here a government official is merely negligent in causing the injury,

REPORT AND RECOMMENDATION
PAGE - 6

1   no procedure for compensation is constitutionally required."). To permit actions based upon

2   mere negligence "would make of the Fourteenth Amendment a font of tort law to be

3   superimposed upon whatever systems may already be administered by the States." *Paul v.*

4   *Davis*, 424 U.S. 693, 701 (1976).

5   A plaintiff must also allege facts in his § 1983 complaint showing how individually

6   named defendants caused or personally participated in causing the harm alleged in the complaint.

7   *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under §

8   1983 solely on the basis of supervisory responsibility or position. *Monell v. Department of*

9   *Social Servs., of City of New York*, 436 U.S. 658, 691-694 (1978). The causation requirement of

10  § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act,

11  participated in another's affirmative act, or omitted to perform an act which he was legally

12  required to do that caused the deprivation complained of. *Arnold*, 637 F.2d at 1355 (quoting

13  *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

14  <u>Workplace Safety</u>

15  Plaintiff alleges in his amended complaint that he was denied a safe work environment

16  while working as a trustee at KCCF. (Dkt. 10 at 3-4.) More specifically, plaintiff complains that

17  he was denied proper training "to handle gore, blood, vomit, fecal matter, menstral [sic] smears

18  and other body fluids." (*Id*. at 4.) He also complains that he was denied proper cleaning

19  products, though he notes only that "the machine to spray cleaner and vaccum [sic] was out of

20  order for at least two months."

21  It appears that plaintiff was a pretrial detainee at KCCF at times relevant to his complaint

22  and, thus, his claim regarding workplace safety arises under the Due Process Clause of the

23  Fourteenth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). The Due Process

REPORT AND RECOMMENDATION
PAGE - 7

Clause imposes, at a minimum, the same duty that the Eighth Amendment imposes.  *See id*.  The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes ensuring that inmates receive adequate food, clothing, shelter and medical care, and taking reasonable measures to guarantee the safety of inmates.  *Id*. at 832.  In order to establish an Eighth Amendment violation, a prisoner must show that prison officials knew of and disregarded a substantial risk of serious harm to his health or safety.  *Id*. at 837.

Defendants maintain that plaintiff was sufficiently trained to conduct his janitorial duties at KCCF and that he had ready access to the cleaning supplies necessary to perform his janitorial duties and to safeguard his health.  Defendants have submitted in support of their summary judgment motion evidence demonstrating that inmate workers are provided safety information in a video format which addresses topics such as safety precautions, biohazards, MRSA and cleanliness.  The evidence also demonstrates that inmate workers are given cleaning supplies and gloves, and that protective suits, eye protection, masks, and boots are available to wear as well. Plaintiff has come forth with no evidence to refute the evidence presented by defendants.  The record is devoid of any evidence demonstrating that defendants knew of and disregarded a substantial risk of serious harm to plaintiff's health or safety as it relates to his inmate worker responsibilities.  Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claims regarding workplace safety.

<u>Mental Health Treatment</u>

Plaintiff also alleges in his amended complaint that he wasn't provided mental health treatment and therapy to assist him in dealing generally with the conditions he was subjected to in performing his janitorial duties on the seventh floor, or to assist him more specifically in

REPORT AND RECOMMENDATION
PAGE - 8

1    dealing with an episode of alleged sexual harassment that occurred while he was performing his

2    janitorial duties.

3         As noted above, because plaintiff was apparently a pretrial detainee at times relevant to

4    his amended complaint, his claims regarding the alleged failure to provide mental health

5    treatment arise under the Due Process Clause but Eighth Amendment standards apply. *Carnell v.*

6    *Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).   In order to prevail on any claim that defendants

7    violated his right to adequate medical care, plaintiff must satisfy a two-part test containing both

8    an objective and a subjective component.   The objective component requires proof that the

9    alleged wrongdoing was objectively "sufficiently serious" to establish a constitutional violation.

10   *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).   A medical need is

11   deemed serious if the failure to treat the condition could result in further significant injury or the

12   "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

13   1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

14        The subjective component requires proof that the prison official acted with a sufficiently

15   culpable state of mind. *Farmer*, 511 U.S. at 834.   The state of mind requirement under the

16   subjective component of the applicable standard has been defined as "deliberate indifference" to

17   an inmate's health or safety. *Id.*   In order to establish deliberate indifference, a plaintiff must

18   show a purposeful act or failure to act on the part of prison officials. *McGuckin*, 974 F. 2d at

19   1060.

20        Defendants first argue with respect to plaintiff's claim alleging a denial of mental health

21   services that they are not proper parties regarding the denial of such services.   Defendants note

22   that medical care for inmates at KCCF is provided by JHS, which is a part of the Seattle-King

23   County Department of Public Health, a separate county agency from the DAJD which employs

REPORT AND RECOMMENDATION
PAGE - 9

1    defendants.  Defendants note that though they may refer inmates to JHS for medical care, they

2    have no medical training and do not provide any direct medical care to inmates at KCCF.  While

3    it is clear that none of the named defendants is directly responsible for providing medical care or

4    mental health care to inmates, to the extent plaintiff intends to claim that some defendants denied

5    him access to mental health treatment he has arguably stated a constitutional claim.  *See Estelle*,

6    429 U.S. at 104-05.

7        Plaintiff appears to assign responsibility for the alleged lack of mental health treatment to

8    Commander Karlsson and to Sergeant Allred.  However, plaintiff fails to offer any evidence

9    demonstrating that these two defendants interfered in any way with his ability to obtain mental

10    health treatment.  In fact, it appears from the evidence in the record that both of these individuals

11    made efforts to facilitate plaintiff's access to such treatment by contacting JHS to ensure that

12    plaintiff was receiving the care he needed.  Plaintiff makes no showing that either Commander

13    Karlsson or Sergeant Allred was deliberately indifferent to any serious medical need.

14    Accordingly, defendants are entitled to summary judgment with respect to this claim as well.

15                                                    Retaliation

16        Plaintiff alleges in his amended complaint that he was terminated from his inmate worker

17    position in retaliation for pursuing grievances and for seeking help to manage the mental trauma

18    associated with working around mentally ill inmates.  Plaintiff does not make clear in his

19    amended complaint which of the named defendants engaged in the alleged retaliatory conduct.  It

20    appears that Sergeant Allred may be implicated in this claim.  In addition, the Court presumes,

21    based on materials submitted by defendants in support of their motion for summary judgment,

22    that the individual identified by plaintiff in his amended complaint as C.O. B. Johnson is also

23    implicated in this claim.

REPORT AND RECOMMENDATION
PAGE - 10

In order to prevail on a retaliation claim under § 1983, a plaintiff must show he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni.* 31 F.3d 813, 816 (9th Cir. 1994). Thus, in order to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to defendant's actions. *See Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). The Court evaluates a retaliation claim in light of the deference accorded prison officials. *Id*. at 807.

The evidence submitted by defendants in support of their summary judgment motion indicates that Sergeant Allred made the decision to move plaintiff out of inmate worker housing on June 27, 2013 out of concern for plaintiff's safety. (Dkt. 28, Ex. B.) Once plaintiff was removed from inmate worker housing, he was not reassigned to other inmate duties. (Dkt. 27 at 3.) On July 23, 2013, plaintiff met with Classification Officer Vincent Johnson for purposes of a review hearing and plaintiff was provided an opportunity to explain why he felt he should be reassigned to another inmate worker position. (*See id*. at 4.) Defendant Johnson advised plaintiff that given his removal from his kitchen inmate worker duties for a rule infraction, and his incompatibility with janitorial duties, he would not be reassigned to another inmate worker position. (*Id*.)

Plaintiff offers no evidence of any retaliatory motive underlying his removal from his inmate worker duties. It is abundantly clear from the record before this Court that plaintiff was unsuited for janitorial duties. Given plaintiff's earlier termination from another inmate worker assignment for a rule infraction, the decision not to assign plaintiff to another inmate worker

REPORT AND RECOMMENDATION
PAGE - 11

1    position when he complained of difficulties inherent in the janitorial position does not suggest a

2    retaliatory motive.  It suggests instead that the decision was made for legitimate penological

3    reasons and plaintiff has offered no evidence to rebut that conclusion.  Accordingly, defendants

4    are entitled to summary judgment with respect to plaintiff's retaliation claim.

5                                              Legal Access

6          Plaintiff asserts in his amended complaint that defendant Deborah Ogle failed to grant

7    him access to the legal work station at KCCF.  While plaintiff does not say so expressly, the

8    Court presumes that plaintiff intends to allege a violation of his right of access to the courts.  In

9    *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court acknowledged that inmates have a

10   constitutional right of meaningful access to the courts premised on the due process clause.  *Id*. at

11   821.  The Supreme Court subsequently made clear that in order to adequately allege a cause of

12   action for deprivation of the right of access to the courts, an inmate must demonstrate that he

13   suffered some actual injury to his right of access.  *Lewis v. Casey*, 518 U.S. 343 (1996).

14         The Supreme Court explained in *Lewis* that *Bounds* did not create an abstract, free-

15   standing right to a law library or to legal assistance, and that an inmate therefore could not

16   establish relevant actual injury "simply by establishing that his prison's law library or legal

17   assistance program [was] sub-par in some theoretical sense."  *Lewis*, 518 U.S. at 351.  Rather, in

18   order to establish a *Bounds* violation, an inmate was required to demonstrate that the alleged

19   shortcomings in the prison's legal access scheme had hindered, or were hindering, his ability to

20   pursue a non-frivolous legal claim.  *Id*. at 354-55.

21         Plaintiff fails to demonstrate that he suffered any actual injury to his right of access while

22   confined at KCCF.  Plaintiff contends in his amended complaint that he was denied "legal

23   research," but he does not explain what the intended purpose of his legal research was.  A review

REPORT AND RECOMMENDATION
PAGE - 12

of the documentation attached to Ms. Ogle's declaration in support of defendants' summary judgment motion suggests that some of plaintiff's requests for access to the legal workstation were related to his criminal matter while others indicated a desire to pursue a civil matter. To the extent plaintiff sought access for purposes of researching issues related to his criminal proceedings, the record makes clear that plaintiff had an attorney representing him in those proceedings and, thus, he establishes no actual injury.

As to any civil action plaintiff may have wished to pursue, he fails to establish that the alleged denial of access to the legal research workstation hindered his ability to pursue a non-frivolous legal claim. As nothing in the record demonstrates that plaintiff suffered any actual injury to his right of access while he was confined at KCCF, defendants are entitled to summary judgment with respect to plaintiff's access to courts claim.

<u>Pendant State Law Claims</u>

Plaintiff indicated in his amended complaint that his intention was to bring a suit for "negligence" and for "nuisance" as well as for violations of his civil rights. This assertion suggests that plaintiff may have been intending to assert state law claims along with the claims which this Court has construed as implicating federal constitutional concerns. The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because this Court has concluded that plaintiff's federal constitutional claims should all be dismissed, any intended state law claims should be dismissed as well.

<u>CONCLUSION</u>

Defendants have properly supported their summary judgment motion by pointing out through argument, declarations, and exhibits that "that there [was] an absence of evidence to

REPORT AND RECOMMENDATION
PAGE - 13

support" plaintiff's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In light of the evidence produced by defendants in support of their summary judgment motion, the burden was on plaintiff to produce authenticated materials in opposition to the motion that "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); s*ee Celotex*, 477 U.S. at 323.  Plaintiff has not satisfied that burden and, thus, defendants are entitled to summary judgment.

Based upon the foregoing, this Court recommends that defendants' motion for summary judgment be granted and that plaintiff's amended complaint and this action be dismissed with prejudice as to any intended federal constitutional claims and without prejudice as to any intended state law claims.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 14, 2014**.

DATED this 21st day of October, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14